## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **JEANNIE R. BARTLEY,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:18cv00023 |
| | ) | **REPORT AND** |
| **ANDREW SAUL,**[1] | ) | **RECOMMENDATION** |
| **Commissioner of Social Security,** | ) | |
| Defendant | ) | By:  PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |

### *I. Background and Standard of Review*

Plaintiff, Jeannie R. Bartley, ("Bartley"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 *et seq.* (West 2011 & 2019 Supp.). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). Neither party has requested oral argument. This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is substituted for Nancy A. Berryhill as the defendant in this case.

be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bartley protectively filed her application for DIB on April 28, 2014, alleging disability as of March 10, 2014, based on back, leg and shoulder pain; arthritis; problems with her hands; low potassium; and "bad nerves and difficulty focusing and staying on task." (Record, ("R."), at 15, 186-87, 202, 208.) The claim was denied initially and upon reconsideration. (R. at 99-100, 110-13.) Bartley then requested a hearing before an administrative law judge, ("ALJ"). (R. at 115-16.) The ALJ held a hearing on May 11, 2017, at which Bartley was represented by counsel. (R. at 33-70.)

By decision dated July 13, 2017, the ALJ denied Bartley's claim. (R. at 15-27.) The ALJ found that Bartley met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2019. (R. at 18.) The ALJ found that Bartley had not engaged in substantial gainful activity since March 10, 2014, the alleged onset date.[2] (R. at 18.) The ALJ found that Bartley had a severe impairment, namely degenerative joint disease of the left shoulder, but he found that Bartley did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18, 20.) The ALJ found that Bartley had the residual functional

---

[2] Therefore, Bartley must show that she was disabled between March 10, 2014, the alleged onset date, and July 13, 2017, the date of the ALJ's decision, in order to be eligible for benefits.

capacity to perform a limited range of light work.[3] (R. at 21.) The ALJ found that Bartley was unable to perform her past relevant work. (R. at 25.) Based on Bartley's age, education, work history and residual functional capacity, and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Bartley could perform, including jobs as a cashier, a marker and an inspector. (R. at 25-26.) Thus, the ALJ concluded that Bartley was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 27.) *See* 20 C.F.R. § 404.1520(g) (2018).

After the ALJ issued his decision, Bartley pursued her administrative appeals, (R. at 179), but the Appeals Council denied her request for review. (R. at 1-5.) Bartley then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2018). This case is before this court on Bartley's motion for summary judgment filed February 18, 2019, and the Commissioner's motion for summary judgment filed March 19, 2019.

## II. Facts[4]

Bartley was born in 1970, (R. at 38, 186), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). Bartley has a high-school education and past work experience as a certified nursing assistant, ("CNA"). (R. at 39, 203.)

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2018).

[4] Bartley's only dispute is with respect to the ALJ's assessment of her mental limitations. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.) Therefore, the court will address the facts relevant to Bartley's mental health.

Bartley testified that she experienced crying spells daily. (R. at 47-48.) She stated that she kept her young grandchild during the day. (R. at 50, 59-60.)

Robert Jackson, a vocational expert, also was present and testified at Bartley's hearing. (R. at 64-68.) Jackson classified Bartley's past work as a CNA and a personal care aide as medium[5] and semi-skilled. (R. at 65.) Jackson was asked to consider a hypothetical individual of Bartley's age, education and work history, who could perform light work that did not require more than frequent crawling, crouching, kneeling, stooping and balancing and that did not require her to climb ladders, ropes or scaffolds or work around wetness and hazards. (R. at 65.) Jackson testified that such an individual could not perform Bartley's past work, but could perform other work existing in significant numbers in the national economy, including jobs as a cashier, a marker and an inspector/grader. (R. at 65-66.) Jackson was next asked to consider the same individual, but who could only frequently use the left upper extremity for pushing, pulling and reaching and who could not work around extremes of cold or vibration. (R. at 66.) He stated that the individual could perform the previously mentioned jobs. (R. at 66.)

Next, Jackson was asked to consider the same hypothetical individual, but who would be limited to performing simple, routine tasks that did not involve working with the public. (R. at 66.) Jackson testified that such an individual could not perform the previously identified job as cashier, but the individual could perform work such as a packer. (R. at 66-67.) Jackson was asked to consider the same hypothetical individual, but who would be limited to performing sedentary[6]

---

[5] Medium work involves lifting items weighing up to 50 pounds at a time and frequently lifting and carrying items weighing up to 25 pounds. If someone can do medium work, she also can do light and sedentary work. *See* 20 C.F.R. § 404.1567(c) (2018).

[6] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is

work. (R. at 67.) He stated that such an individual could perform work such as an inspector/grader, a packer and a machine operator. (R. at 67.) Jackson stated that, should the individual be prohibited from using her upper extremities for fine manipulation, there would be no jobs available that she could perform. (R. at 68.)

In rendering his decision, the ALJ reviewed records from Jo McClain, Psy.D., a state agency psychologist; Howard S. Leizer, Ph.D., a state agency psychologist; Community Physicians – Norton, ("Community Physicians"); Southwest Virginia Regional Cancer Center, ("Cancer Center"); and Dr. Salman Gohar, M.D.

In August 2007, Bartley was seen at the Cancer Center for anemia. (R. at 471.) On August 30, 2007, Bartley voiced no complaints, apart from fatigue. (R. at 470.) She reported that her depression symptoms were stable on medication, and it was noted that she had a calm affect. (R. at 470.)

On February 6, 2014, Dr. Emory Mullins, M.D., a physician with Community Physicians, saw Bartley for complaints of depression. (R. at 278-80.) Bartley stated that her symptoms were caused by stress due to her family situation. (R. at 278-79.) Dr. Mullins reported that Bartley was alert and in no acute distress. (R. at 279.) He diagnosed anxiety and depression and prescribed medication. (R. at 279.)

On November 8, 2014, Dr. Salman Gohar, M.D., evaluated Bartley at the request of Disability Determination Services. (R. at 290-94.) Bartley alleged disability, in part, due to "bad nerves." (R. at 290.) She stated that she had

---

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2018).

experienced generalized anxiety for "some time." (R. at 291.) She denied having panic attacks. (R. at 291.) Dr. Gohar reported that Bartley was alert; she had an anxious mood and associated congruent affect; she had linear thought process; she was able to follow complex directions appropriately without the need for cues; and she was able to spell the word "world" backwards without any mistake. (R. at 292.) Dr. Gohar diagnosed anxiety disorder, and he did not place any limitations on Bartley's work-related mental abilities. (R. at 293-94.)

On November 18, 2014, Jo McClain, Psy.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Bartley had no restrictions in her activities of daily living, had no difficulties in maintaining social functioning, experienced no difficulties maintaining concentration, persistence or pace and had experienced no repeated episodes of extended-duration decompensation. (R. at 77-78.)

On March 2, 2015, Howard S. Leizer, Ph.D., a state agency psychologist, completed a PRTF, finding that Bartley had no restrictions in her activities of daily living, had no difficulties in maintaining social functioning, experienced no difficulties maintaining concentration, persistence or pace and had experienced no repeated episodes of extended-duration decompensation. (R. at 91-92.) Leizer noted that, while Bartley had a history of anxiety and depression, her examinations were normal. (R. at 92.)

On August 11, 2015, Bartley reported that her depression and stress level had worsened. (R. at 456.) She attributed her stress to her grandchildren. (R. at 456.) Dr. Mullins diagnosed depression and anxiety and adjusted Bartley's medication dosage. (R. at 458.) On April 11, 2016, Bartley complained of increased "nerves" and requested that her medication be changed or increased. (R.

at 452.) Dr. Mullins diagnosed depression and anxiety and changed Bartley's anti-depressant medication prescription. (R. at 454.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2018). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2018).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2011 & 2019 Supp.); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute

its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Bartley argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 4-5.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a) (2018). Basic work-related mental activities include understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b). Although the Social Security regulations do not define the term "significant," this court previously has held that it must give the word its commonly accepted meanings, among which are, "having a meaning" and "deserving to be considered." *Townsend v. Heckler*, 581 F. Supp. 157, 159 (W.D. Va. 1983). In *Townsend*, the court also noted that the antonym of "significant" is "meaningless." 581 F. Supp. at 159.

In evaluating the severity of mental impairments, the ALJ must first determine the degree of functional loss in four areas considered essential to the ability to work: (1) understanding, remembering or applying information; (2) interacting with others; (3) the ability to concentrate, persist or maintain pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3) (2018). These areas are rated on the following five-point scale: none, mild, moderate, marked and

extreme. *See* 20 C.F.R. § 404.1520a(c)(4). The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *See* 20 C.F.R. § 404.1520a(c)(4). If a claimant's degree of limitation in all of these areas is rated as "none" or "mild," the Commissioner generally will find that the claimant's impairment is not "severe" unless the evidence otherwise indicates that there is more than a minimal limitation in the ability to do basic work activities. *See* 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found that Bartley had "no limitations" in all four areas. (R. at 18-20.)

The ALJ explained that the area of understanding, remembering and applying information refers to an individual's ability to learn, recall and use information to perform work activities. (R. at 18.) This category considers a claimant's ability to understand and learn terms, instructions and procedures, to follow one- to two-step oral instructions, to recognize a mistake and correct it, to identify and solve problems, to sequence multi-step activities and to use reason and judgment to make work-related decisions. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.1 (2018).

The ALJ noted that, while Bartley reported some increased anxiety and depression to her primary care physician at times, she generally attributed this to familial stress. (R. at 18.) The ALJ noted that the medical evidence showed no serious deficits in Bartley's memory, insight or judgment, and she was able to provide her full history to treating and examining practitioners. (R. at 18-19, 291, 297, 300.) Bartley reported that she performed normal and necessary household activities, such as cooking, cleaning and shopping. (R. at 291.) Bartley did not complain of symptoms related to understanding and remembering, but generally only complained of increased situational stress. (R. at 19, 278-79, 300-01, 456.)  In addition, Bartley reported that she assisted her husband with reading and writing

and taught her grandchild preschool activities such as learning letters. (R. at 49, 60.) She also stated that she was responsible for knowing when the bills needed to be paid and when appointments were scheduled. (R. at 61.) Dr. Gohar reported that Bartley was able to follow complex directions appropriately without the need for cues, and she was able to spell the word "world" backwards without any mistake. (R. at 292.) The ALJ, therefore, found that Bartley had no limitations regarding her ability to understand, remember and apply information.

The ALJ explained that the area of interacting with others refers to a claimant's capacity to relate to and work with supervisors, co-workers and the public. (R. at 19.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.2. Examples of interacting with others include, cooperating with others, asking for help when needed, handling conflicts, stating own point of view, initiating or sustaining conversation, understanding and responding to social cues, responding to requests, suggestions, criticism, correction or challenges and keeping social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.2. The ALJ noted that Bartley interacted normally with her medical providers. (R. at 19, 401.) She appeared pleasant, cooperative and in no distress without any deficiencies in eye contact, speech or conversation. (R. at 19, 292, 401.) Bartley stated that she attended church every Sunday, socialized with her family on a regular basis, and she assisted her husband, who had a stroke, with reading and writing. (R. at 49, 56-57.) She testified that she got along "pretty … good" with everyone. (R. at 57.) There is no indication that Bartley complained of problems interacting with others to her treatment providers. Therefore, the ALJ found that Bartley had no limitations in the category of interacting with others.

The ALJ explained that the area of ability to concentrate, persist or maintain pace concerns actions that demonstrate the ability to focus attention on work activities and stay on task at a sustained rate. (R. at 19.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.3. Examples include initiating and performing a work task, working at an appropriate and consistent pace, completing tasks in a timely manner, ignoring distractions, changing activities without being disruptive, working close to or with others without interrupting or distracting them and sustaining an ordinary routine and regular attendance at work, as well as the ability to work a full day without needing more than the allotted number or length of rest periods customarily provided. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.3. The ALJ noted that Bartley voiced no significant complaints with problems in the area of concentration, persistence or pace to her medical care providers, nor did her providers observe that she was overly distractible or slow. (R. at 19.) Bartley was alert and cooperative, and she had linear thought process. (R. at 292, 401, 409.) Bartley reported doing a variety of daily tasks that required concentration, persistence or pace, including assisting her husband with reading and writing, watching her grandchild and teaching her grandchild preschool activities, such as learning letters. (R. at 49-50, 60.) She also stated that she was responsible for knowing when the bills needed to be paid and when appointments were scheduled. (R. at 61.) Thus, the ALJ found that Bartley had no limitations in her ability to concentrate, persist or maintain pace. (R. at 19-20.)

The ALJ explained that the area of adapting or managing oneself deals with a claimant's ability to regulate emotions, control behaviors and maintain well-being in a work setting. (R. at 20.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. This includes the ability to respond to demands, adapt to changes, manage psychologically based symptoms, distinguish between acceptable and unacceptable work performance, set realistic goals, make plans independently of

others, maintain personal appearance and attire and to be aware of normal hazards and to take precautions. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.4. The ALJ noted that Bartley did not report, and her medical care providers did not observe, any serious problems with adaptation or managing herself. (R. at 20.) Bartley was able to assist her husband, watch her grandchild and perform activities of daily living without assistance. (R. at 49-50, 60, 291.)  Thus, the ALJ found that Bartley had no limitations in her ability to adapt or manage herself. (R. at 20.)

Bartley argues that her treatment with medication for her complaints of depression and anxiety warrants a finding of a severe mental impairment. (Plaintiff's Brief at 4-5.) The fact that a claimant received treatment is not sufficient to show a "severe impairment." *See Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 789 (3d Cir. 2003) (stating "the fact that he was on medication simply indicate[s] that he did have some depression, but do[es] not conflict with the ALJ's finding[] that the depression was not severe"). The state agency psychologist opined that Bartley's mental impairments were not severe and resulted in no limitations. (R. at 77, 91.) While Dr. Mullins adjusted Bartley's medication, he placed no limitations on Bartley's work-related mental abilities. (R. at 454, 458.) Based on the above, I find that substantial evidence exists to support the ALJ's finding that Bartley did not suffer from a severe mental impairment.

While Bartley does not argue that the ALJ erred by refusing to admit a psychological evaluation report from psychologist, L. Andrew Steward, Ph.D., into the record, she notes the ALJ's refusal to do so in her argument. (Plaintiff's Brief at 5.) During the administrative hearing, the ALJ noted that additional evidence, a psychological evaluation, had been submitted to him fewer than five days before the hearing without notice. (R. at 35-36.) Bartley's attorney explained that her office received the final assessment on the day it was submitted, and the ALJ

permitted her to submit a statement explaining why these circumstances met the exceptions set forth in 20 C.F.R. § 404.935(b). (R. at 36.)

Under 20 C.F.R. § 404.935(a), when a claimant submits a request for a hearing, the claimant must submit information or evidence as required under § 404.1512 or any summary of the evidence to the ALJ. *See* 20 C.F.R. § 404.935(a) (2018). Pursuant to § 404.935(a), "[e]ach party must make every effort to ensure that the [ALJ] receives all of the evidence and must inform [the ALJ] about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing." However, if the claimant fails to comply with the regulations set forth in paragraph (a), the ALJ "may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply."[7]

However, in providing guidance regarding what is often referred to as the "Five-Day Rule," the Social Security Administration, ("SSA"), recognized "that there will be circumstances in which claimants cannot produce evidence at least five business days before the hearing." *Kline v. Berryhill,* 2019 WL 1782133, at *3 (W.D. N.C. Apr. 23, 2019) (quoting Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016)). As a result, the SSA "included appropriate exceptions to the 5-day requirement to ensure fairness when a claimant or his or her representative actively and diligently seeks evidence but is unable to obtain it." *Kline*, 2019 WL 1782133, at *3.

---

[7] The court notes that Bartley does not cite to a specific provision in § 404.935(b) to support her argument that the ALJ should have accepted her late-produced medical statements. However, the court finds that Bartley's "good cause" arguments most closely relate to a purported exception under § 404.935(b)(3). That subsection deals with unusual, unexpected or unavoidable circumstances beyond a claimant's control that prevent her from informing the ALJ about or submitting the evidence earlier. *See* 20 C.F.R. § 404.935(b)(3).

"Regarding the listed exception concerning unexpected or unavoidable circumstances beyond the claimant's control, the SSA has advised that when 'a claimant or representative shows that he or she made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the evidence in time to submit it at least 5 business days before the hearing because of circumstances outside of his or her control, [the SSA] expect[s] that our adjudicators would find that this standard is met.'" *Kline,* 2019 WL 1782133, at *3. While it is clear that there are different ways in which a claimant may satisfy the exception to the Five-Day Rule established in § 404.935(b)(3), and the regulations do allow some flexibility in meeting the good cause standard established in § 404.935(b)(3), the plain meaning of the regulation and the SSA's guidance illustrates that the claimant must make some showing that an event, which was out of the ordinary or unavoidable and was also outside of the claimant's control, prevented the claimant from informing the ALJ or submitting the proposed evidence within five days of the hearing.

On May 11, 2017, Bartley's attorney submitted a statement to the ALJ, stating that Bartley had a psychological evaluation scheduled on March 16, 2017; however, the psychologist was unable to see Bartley due to illness. (R. at 250.) Bartley completed the psychological testing on March 16, 2017, and returned to complete the evaluation on April 21, 2017. (R. at 250.) Bartley's attorney received the psychological report on May 9, 2017, and submitted it to the Office of Disability Adjudication and Review, ("ODAR"), later that day. (R. at 250.) Bartley's attorney admitted some confusion among support staff as to how to implement the new rules regarding the submission of evidence. (R. at 250.) However, Bartley's attorney did state that this was her ultimate responsibility, but she failed to perform her duty. (R. at 251.)

The ALJ refused to accept the late-produced psychological evaluation completed by psychologist Steward on May 9, 2017, because the requirements of 20 C.F.R § 404.935(b) were not met. (R. at 15.) The ALJ noted that "there are narrow circumstances in which evidence will be accepted and the claimant's representative has failed to identify a circumstance provided for by the regulations for the failure to submit the evidence or advise the Hearing Office of the existence that falls within this criteria. As such, the evaluation is not accepted or made part of the record." (R. at 16.)

Bartley's attorney does not demonstrate any of the circumstances set forth in 20 C.F.R. § 404.935(b). (R. at 250-51.) Bartley's attorney failed to explain why her office did not provide notice of the offered evaluation until May 9, 2017, although it was completed on April 21, 2017. (R. at 250.) Further, Bartley's attorney admitted that confusion over implementation of the new rule within her office resulted in a missed deadline, although ultimately, she took full responsibility for the oversight. (R. at 251.) Therefore, the ALJ found that Bartley's attorney failed to identify a circumstance provided for by the regulations for the failure to submit the evidence or to advise the hearing office of its existence that falls within the criteria. (R. at 16.) Thus, the ALJ did not accept or make the evaluation report a part of the record. (R. at 16.)

Based on my review of the record, I find that Bartley did not satisfy the requirements under § 404.935(b)(3) to warrant an exception. It was Bartley's responsibility to demonstrate an exceptional reason why she failed to timely produce the evaluation report, including whether she actively and diligently sought the late-filed evidence. *See Midkiff v. Berryhill*, 2019 WL 1258845, at *2 (S.D.W.V. Mar. 19, 2019). Bartley, however, has failed to demonstrate that she actively sought the late-produced medical statements and show that unforeseen or

unavoidable circumstances beyond Bartley's control *prevented* her from timely submitting Steward's psychological report as required under § 404.935(a) and § 404.1512.

Ultimately, it was Bartley's responsibility to provide all relevant evidence related to her disability on time or to demonstrate an exceptional reason why she failed to timely produce such evidence. *See* 20 C.F.R. §§ 404.935(a),(b), 404.1512(a). Bartley simply has failed to meet her burden to timely produce the psychological evaluation and articulate a basis for an exception for late-produced evidence under § 404.935(b)(3). Accordingly, I find that the ALJ did not err in rejecting Steward's psychological evaluation.

Based on the above, I find that the ALJ properly weighed the evidence and that substantial evidence exists to support the ALJ's finding that Bartley did not suffer from a severe mental impairment. I also find that substantial evidence exists to support the ALJ's decision to reject the filing of Steward's psychological evaluation.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's finding that Bartley did not suffer from a severe mental impairment;

2. Substantial evidence exists in the record to support the ALJ's decision to reject the filing of Steward's psychological evaluation; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Bartley was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Bartley's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2018):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time at this time.

DATED:    October 25, 2019.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE